I'm here for Robert Ogle, the trustee for the Erickson Litigation Trust. You've already mentioned it, but let me just say I am glad to be back arguing in person again and I'm ready for things to open up. Of course, it does mean that if you guys get mad at me and start yelling, I can't pretend that I've lost the signal, so there is that issue. So this is a voidable transfer case. The trustee's claims are based on the fact that he says the defendant caused, there's multiple defendants, the defendants caused Erickson to enter into a settlement agreement in a Delaware class action and derivative lawsuit and in that settlement agreement, these defendants got a broad releases for themselves at less than reasonably equivalent value shortly before Erickson filed for bankruptcy. The trustee seeks to avoid those releases through the operation of 11 U.S.C. 548 and 544 and to recover the reasonable value that they should have gotten under 550. He also seeks to avoid about $30 million in notes and fees relating to Erickson's acquisition of Evergreen. That was the prior company that some of these directors worked for and by the way, Erickson is not the phone company, it's a helicopter company and there was an acquisition of another company called Evergreen that was also a helicopter company. At any rate, that $30 million or so was paid to companies that were related to those directors for their personal benefit in a transaction that rendered Erickson insolvent. The district court dismissed the case based on this court's decision in the Bessing matter reasoning that because a Delaware court had approved the settlement, the trustee could not challenge the reasonable equivalent value of that settlement and the money that came to Erickson as a result of it. That was based on looking at the creditor's constructive fraudulent transfer claims because the actual fraudulent transfer claims. With respect to the actual fraudulent transfer claims, the district court dismissed because she found that they had not been pleaded with particularity and that in any event, the trustee must be in privity with Erickson and Erickson through the settlement was prohibited from bringing claims based on the Evergreen transaction. The bankruptcy court also ruled, in addition to Bessing, that a doctrine called the Rooker-Feldman Doctrine applied to render two counts capable of being dismissed. We believe that all of these findings were error. You guys have read the briefs and to me, these issues in this case are kind of dense. Don't call us you guys. I'm sorry, Your Honor. That's the one thing that is a no-no to me. I'm sorry. But you're right. They're dense. They're dense. And I'm not sure really what it is that you all are the most interested in hearing from me and so I'm happy for you to tell me or I'll just take questions as they come. To me, to me, the main issues in all these different cases and the different theories that come up sort of revolve around preclusion-type issues and so I'm happy to address that sort of thing first or I could go in whatever order you would prefer. What's your best case for overcoming Bessing and Erlewine? My best case for overcoming Bessing and Erlewine is probably how it's explained in Moser, perhaps. Let me see if I can get you another one. Just a second. Moser? Let me just go through, let me go through Bessing and whether there's an actual case that hits these exact points, I'm not sure, but the main reason that Bessing doesn't control here is because this case is nothing like the Bessing case was. Bessing involved a situation where you had an actual finding by a state court on the issues that were related to the case. This case doesn't have that. This is not, Bessing was the case where there were claims that belonged to a company. The company's claims then were dismissed in a case as a discovery sanction. Based on Texas law, I believe it was at the time, if there was a ruling on a discovery sanction and if a matter was dismissed based on that, that was a ruling on the merits. As a result of the ruling on the merits, when this court was looking at the Bessing case, it determined that it didn't need to look at reasonably equivalent value because the value of the claim involved, which had previously belonged to the company, was zero. The reason it was zero is because the lower court had dismissed it as a discovery sanction and it was based specifically on the merits. This case is not like that. The transfer claims that are involved here are owned only by Erickson's creditors. Erickson never owned the claims under 548, 544, 550 or even the— Well, the trustee in Bessing was in the same position as you claim the trustee is here. But the nature of the claim is different in that the thing that got dismissed that had no value was a claim that belonged to the company. It had no value only because it was dismissed as a discovery sanction and the court had to go to great lengths to explain why that was reasonably equivalent value. It just seems to me that Bessing has a lot to say about this case and that's reinforced by Erlewine. At Erlewine, at the end of it, Judge King, who was no slouch in bankruptcy, pointed out that the court had modest support from the Supreme Court's decision in BFP v. Resolution Trust, which had to do with the importance of deference to state court judgments. But Erlewine also said that the main reason that Bessing came out the way it did was because the court had concluded that the claim itself had no value and there was no such conclusion by the Delaware court in this case. You mean if they had transferred zero in settlement instead of 18.5 million in the Delaware court, do you think that would have made it a Bessing case? No. What would have made it a Bessing case is if the claim itself had belonged to Erickson to begin and Erickson had lost the claim either by trying it on the merits and losing or having it stricken because of a discovery dispute. This court looked at the Bessing situation and said that's a ruling on the merits and we are not going to trouble that. But there's many cases, and we've cited them in our briefing, and I'm sorry if I can't reel them off the top of my head, but there are many cases that if you were just looking at a settlement that's just approved with no objection, that's not the same as a finding on the merits. It's not a finding on the merits. It can't be a finding on the merits because what it's approving is a settlement that specifically doesn't have a merits finding and says nobody admits fault. It is not a finding. Well, no. It was a settlement that was reached after two and a half, two, two and a half years of intense litigation and discovery of a million documents. Well there may have been a lot of documents that were involved in the case, but here's what wasn't involved. Any claim by the creditors. The creditors were not parties. Well, it's a derivative suit. So a derivative suit is . . . I thought about that a lot, and a derivative suit is brought on behalf of the corporation. Yes, but when you bring a suit, a derivative suit on behalf of the corporation, if you don't bother to tell anyone, such as the judge involved, that the company Erickson is insolvent as a result of these transactions and that the company, by the time that you get to the settlement, is about to file bankruptcy . . . Do you think nobody realized that because the stock price had plunged from $28 a share to probably $2 a share and was even less than that at the time they filed bankruptcy? Whether anyone realized it or not, no one bothered to say that among the constituents that somebody should be talking to in connection with the settlement are the creditors because they should have an interest in the case. And the judge, much different than the judge that was at issue in the Bessing case, the Bessing case, was concerned about it but said, I'm going to approve it because nobody is objecting. And the reason nobody is objecting is because the creditors weren't there and the creditors claimed were not there. Different parties, different claims. If somebody had wanted to bring them in, they could have. A derivative suit is a suit on behalf of the corporation. This is not like the Seventh Circuit class GE versus lease resolution, whatever it was, which was a class action by shareholders or limited partners, owners. This is a derivative action on behalf of the corporation and a certain portion of the settlement was allocated to the corporation, and I believe that the Delaware Chancery Court had to approve that division of the settlement, did it not? Which the judge, yes, and which the judge said, but I don't want anybody to be saying that this is, that I have made a determination that this is an appropriate division because nobody here is objecting and so I'm going to approve it. I think they're taking issue with the way you quote that, but I haven't read that settlement transcript. And you've asked me to give you the record site for it and I should be able to just give you that right now and maybe in my last five minutes I'll look it up and figure it out. You have rebuttal and we have what are called 28J letters, but I looked into this quite a bit in regard to the disclosure statement and the plan and so on, and what doesn't explain to me why it makes sense that these people supposedly fleeced Erickson with the Evergreen purchase so that they could pay off $27.5 million in second lien notes and become the majority shareholder in Evergreen only to see all that go to pot. Where did they lose more money? They would have lost more money on Evergreen had they not had Erickson take it over. I mean, that's what the allegations are. I see. So they only lost $100 million whereas they might have lost $200 million or something. I don't know that they lost $100 in Erickson, but they would have lost more than $100 in Evergreen and they were trying not to lose as much money as possible and seeing how far they could go. And where's your, where's your, so you don't, I mean, you allege that? Yes. Yes, it's alleged. The whole basis for it is in there. We have, we have alleged all of the different steps that would be required if none be applied. And that's almost verbatim the same as the allegations in the Delaware claim, right? Some, some of the, some of the allegations are similar to the first five counts. Yes, they are, but they could be identical and it shouldn't matter. If the creditors have other claims that are based on the same facts, nobody brought them into the case. Let me, let me just put it to, I mean, I'm, I'm really, I'm not fully decided on this case, so don't get that impression. But if this had been, if this case had not been filed until the bankruptcy had occurred, then there wouldn't be any question in my mind that it could be pursued by the trustee on behalf of the bankrupt company against the former shareholders or what. But it occurred beforehand. It went through complete discovery and pretrial with separate trial. And then they settled. And I don't understand why that, the fairness of that can be upended simply because you replaced the, the derivative suit with the trustee. Because the fairness that's involved in settling a derivative suit or a class action lawsuit is not the equivalent of a reasonably equivalent value analysis under the bankruptcy court. They look at different things. And because they look at different things, and those, the 548, 544, 550, it doesn't even come into existence until the bankruptcy is filed. And so the creditors then can look at it and they can go back two years to look at things that have happened where there's been transfers of value. And in this case, these guys, and they are all guys on this one, these, these directors settled the claim, knowing that they're getting ready to file bankruptcy. And then after they get the broadest release that they can that covers claims that aren't even at issue in the case, they then file for bankruptcy. And then when the creditors say, we have transfer claims, they say, oh, I'm sorry, but they're already released. That is not, that is not the policy that should be involved here. It's not the policy that should be involved in any of the circuits from our, from our perspective. And, and we, and you should not encourage that, that to be able to happen. And the only way not to is to make sure that the bankruptcy rules apply the way that they're written, which is the creditors have these claims, the ability to pursue them. And there's not a, a privity problem here, a race judicata, collateral estoppel, because they were not involved in that and their, and their interests were not made known to the judge at any time. And I will reserve the rest of my time. Okay. Thank you. You have time for rebuttal. Mr. Rudin. May it please the Court, Alan Lapine on behalf of the Appalese. I think there is a . . . Sorry, I read the wrong name. Yes, Lapine. Yes. Thank you, Your Honor. I believe there is a common thread that underlines all of the issues and the arguments in this case. Whether we talk about Rooker-Feldman, race judicata, or claim preclusion, or the, this Court's opinions in the Bessing and Erlewine cases. And I, that common thread is the role of the Delaware Court in approving the settlement of a derivative action. And I think, Judge Jones, you've, you've touched on that in your questioning. Under Delaware law, the Chancery Court is a fiduciary. That's what Delaware law provides. The Delaware Court has a fiduciary responsibility to make an independent assessment of the intrinsic fairness of the settlement of derivative claims. The process that the Court follows is described in several opinions that we've cited in our papers. The Act Division, Blizzard decision, Forsyth versus ESC management. And I would note that these opinions were written by Judge Laster. Who was the, Vice Chancellor Laster, who was the judge that approved the settlement in the Erickson case. And Judge Laster goes through the process in, in these decisions, uh, and describes exactly what the Delaware Chancery Court does in approving the settlement of derivative claims. And he says that the Court must, in fulfilling its fiduciary responsibilities, consider the strength of the claims that are being asserted, the defenses that are being raised, the costs associated with litigation, the potential litigation outcomes, and whether the settlement falls within the reasonable range of potential litigation outcomes, and whether the allocation of the settlement proceeds, uh, uh, that allocation is fair and reasonable with respect to the various claimants in the case. That's the process that Judge Laster, in those decisions, indicates the Delaware Court in fulfilling its fiduciary responsibilities follows when it approves the settlement of a derivative action. And we would submit that if a settlement falls within the reasonable range of potential litigation outcomes, which is something that the Delaware Court needs to determine in order to approve the settlement, uh, and if the allocation of the proceeds among the various claimants is fair and reasonable, which, again, the Delaware Court has to determine in order to approve the, uh, the settlement, then we would submit that establishes that the settlement produced reasonably equivalent value. Who represented the corporation in the settlement? Uh, the plaintiff, uh, who had filed the action was pursuing derivative claims, but Erickson also had independent counsel. The claims, obviously, were being pursued on behalf of Erickson. Erickson had independent counsel to represent its interests in, uh, the pursuit of that litigation. How much after the Center Lane ZM group had been ousted? Is that correct or not? Uh, no, they had not been ousted. They were defendants in the litigation, but Erickson was represented by separate, uh, independent counsel, uh, with respect to the, uh, its interests in the pursuit of the derivative claims on behalf of Erickson. Were they still the majority shareholders in Erickson at that point? They were still the majority shareholder of Erickson at that point. What, what, um, what stake do they hold in Erickson at the present time? Uh, well, Erickson at the present time has been reorganized. I understand that. Uh, I, I also, as I said, I read through the, it looked to me from some things I saw, it looked to me as if your client still holds some stake in the company. Yeah. Your Honor, I, I do not know whether that, in fact, is the case in terms of the, uh, the plan of reorganization. I don't believe that to be the case, but I can't be certain with respect to that. Um, and again, what, what we believe is that based on the role that the Delaware court played, again, in fulfilling its fiduciary responsibilities and approving the settlement as being fair, reasonable, adequate, uh, and in Erickson's, uh, best interest, uh, that, that dictates the result in this case whether you apply... But as you said, the court had to figure out the value of the claims being asserted and the avoidance type claims that are now being asserted weren't available pre-petition. Uh, the avoidance claims specifically weren't available, but the claims really that were asserted were the same. Uh, the, the avoidance claims that are being asserted seek, uh, the recovery of damages for breach of fiduciary duty. Uh... Well, they, they would unwind the whole, what is it, $27.5 million? I might have the number wrong, but they would unwind the entire payment. Maybe, maybe the other way to look at it, it's a, it's a stronger remedy or a, but, but... Go ahead with your response. The, they seek recovery of damages for breach of fiduciary duty and they seek to recover the $27.5 million payment that was made. That same claim was asserted in the Delaware litigation, uh, as an unjust enrichment claim based on alleged actual fraud with respect to those payments. The factual allegations in the trustee's complaint are identical to the factual allegations that were asserted in the Delaware litigation and the, uh, the, uh, plaintiff in that litigation pursuing derivative claims on behalf of Erickson sought the recovery of the $27.5 million dollars. So are you saying bessing just eliminate, is the only ground we would need to eliminate this entire lawsuit? I mean, because there was, the courts below seem to be making different rulings on, on the different claims. I think that uh, these, all of these theories I think are somewhat intertwined, but I do believe that bessing disposes of this case in its entirety. I think claim preclusion does as well. Uh, we would assert the same with respect to Rooker-Feldman but clearly in terms of this court's decisions in Bessing and in Erlewine uh, where the court indicated in Bessing that uh, federal courts should not look behind a state court judgment that has resolved claims for purposes of making an independent evaluation of the merits of the claim. That's what would be happening here. And in Erlewine On claim preclusion you know, the typical standard is you're barred from bringing claims you did bring or that you could have brought. Um, and I'm having a hard time seeing, do you have any how it could bar a claim that did not exist pre-petition? Um, what cases do you have that hold that a, a bankruptcy created claim um, was barred by a pre-petition lawsuit under rest, under claim preclusion? Well, I think with respect to claim preclusion and the identity of claims, and you're right Judge Costa, the issue is are the claims the same, if you will. Uh, but both the Delaware courts and uh, courts in this circuit apply the transactional approach for purposes of uh, determining the identity of claims and whether they are the same. And as you know, the issue there is whether the claims arise out of the same nucleus of operative facts. In this particular situation, the claims in both actions arise out of Erickson's 2013 acquisition of Evergreen Helicopters and the payments that were made in connection with that transaction. And uh, the trustee in this action is seeking to recover damages for breach of fiduciary duty and recover the payments which are the identical claims that were asserted in the Delaware action. I think what this court has said previously in the AgriElectric Power Partners case is that uh, the uh, the theory, the legal theory of recovery is not informative of whether the claims are the same. Uh, if the claims are based on the same nucleus of operative facts I get that. I'm just curious if there are cases that have applied that, this transactional test you're talking about to say these bankruptcy claims are precluded because even though they didn't, this specific claim didn't exist pre-petition it could have been brought under a different type of cause of action. I don't recall any specific case uh, and I can't I don't believe we cited any case specifically to answer your question, but I would argue Judge Costa that uh, the rationale in AgriElectric Power Partners uh, really is uh, informative with respect to the issue that is before us today because there is no question that the claims here arise out of the same nucleus of operative facts. If you look at the complaint that was filed in this action and the complaint that was filed in the Delaware action they're almost mirror images of each other in terms of the factual allegations. Well, is is uh, Mr. Taylor accurate when he says the bankruptcy court said I'm approving this allocation between the shareholders and the company because nobody objected? No, he's not correct Judge Jones with respect to that uh, the issue that uh, the chancery court raised with respect to the concern over allocation related only to the methodology that was being employed to distribute the portion of the settlement fund that was allocated to the shareholder direct claims. I assume that had something to do with current and former shareholders? That's absolutely correct Judge Jones and uh, in terms of the the record uh, appears at 962 uh colon 16 dash 963 colon 19 and I think Judge Laster was very clear in that regard. He raised some concerns about that. I think it related to the fact as you indicate as to whether uh settlement proceeds would be distributed to shareholders who may have already sold the shares at the time of the settlement. There was no question raised with respect to the allocation of the settlement fund to the derivative claims uh that uh, belonged to Erickson and again I go back to what I said at the outset which is that uh, the Delaware court is required to make an independent assessment of the merits and the merits of the settlement for purposes of determining whether it's fair and appropriate. So what's your position on um, general electric capital versus lease resolution from the 7th circuit? Uh, if I recall that case your honor, that was the one in which uh uh, the decision of the district court was reversed based on the fact that it had taken judicial notice of uh, a settlement and findings that had been made in connection with the approval of a class action settlement. It was not a derivative case. It was a simply a shareholder class action case but um, in this case we did not argue judicial notice as a basis for relief or for the dismissal of the complaint uh, and Judge Hale and uh, the district judge, they didn't rely upon judicial notice so I don't think that that case has any relevance to uh, the issues that we're confronted with today at all. Um, your point about Bessing being a ground to get rid of the whole case, I mean Bessing on its own terms seems to only apply to constructive fraud claims uh, do you have any authority for extending it to actual fraud claims? Uh I don't have any authority your honor but I think the rationale of Bessing clearly applies. Bessing didn't need to deal with actual fraud because it was uh a recovery sanction and an order entered by the court uh, but again where you have a settlement that is approved by a court uh, that is required to go through the process that the Delaware court is required to go through uh, then it seems to me that the rationale of Bessing uh, clearly applies and I would point out, I thought that Erlewine actually as Judge Jones mentioned earlier is even more instructive with respect to what we have here because in Erlewine uh, in citing to the Supreme Court's decision in BFP and uh, the court the Erlewine court uh, said that uh, federal courts should be, I think they use the word very hesitant to upset uh, a uh, decision of a state court where the state court plays a central role under state law in terms of rendering its decision so what do we have in this case? Under Delaware law the Chancery court is required to act as a fiduciary in terms of uh evaluating and then making its claims that falls within the teaching of Erlewine completely it seems. Counselor, let me ask what is left of the New Jersey settlement uh, judgment of the Chancery court if we accept your friend's arguments in front of us today? Well, the problem and I know Judge Hale had addressed this or mentioned it indicated that he didn't need to get into it but it is a problem it seems to me in terms of I mean the settlement has been consummated uh, releases have been given, payments have been made all of the elements of that settlement were interdependent on each other and if you now decide that a portion of that settlement is going to be unwound I think it raises serious questions uh, Judge Southwick as to uh how do you deal with that situation? Again, Judge Hale raised the issue, indicated he would be concerned about that, didn't need to reach the issue based on his ruling but I think it would present considerable issues in that regard if that were done um let me just touch in the few minutes that remain with respect to Rooker-Feldman um, and again I think all of these as I said are really these theories are intertwined, I think they rely upon some of the same principles in that regard but I do recognize that the Supreme Court has narrowed Rooker-Feldman, it has not claimed preclusion by another name uh, but you know do the elements of Rooker-Feldman apply here? I think they clearly do uh, the question with respect to Rooker-Feldman is is the trustee the state court loser and does he seek uh, review and rejection of the Delaware judgment uh, in this case um the trustee's standing to pursue these claims is derived solely from Erickson's plan of reorganization. As Judge Hale noted in his opinion the trustee is not a bankruptcy trustee. They were a debtor in possession and they gave, they created the trust. Correct and based on what was delegated or assigned to the trustee, he has no authority to bring fraudulent conveyance claims generally uh, against parties, other parties Well, I don't see, I didn't see a copy of the document creating the litigation trust but in the plan at least in disclosure statement those are totally open-ended as to what claims he can pursue but in terms of the plan supplement that uh, which defined the litigation trust causes of action, it is limited to the claims that the Evergreen transaction and from the complaint that was filed in Delaware any claims that arise from or relate to those matters so he can bring his 544 complaint as long as it arises from or relates to the Evergreen transaction. To my way of thinking, that makes him the successor or assignee of The assignment came from the reorganized debtor, actually not the debtor in possession but the reorganized debtor uh, that makes him I believe, the successor or assignee What he's complaining about is that he didn't receive enough of the proceeds uh, that the 20% should have been more I would submit that that makes him at least in his view, the state court loser with respect to this particular matter and the injury for which he seeks redress is the order approving the settlement you know, he argues in his brief it's not the order approving the settlement it's the fact that they negotiated a settlement that was unfavorable uh, to his interests there would be no settlement if there was not an order uh, and on that basis, we think Ricker Feldman uh, all the boxes are checked and uh, we believe that the decisions of the lower courts were correct and ought to be affirmed Alright, thank you sir. Thank you Mr. Taylor Rebuttal Returning to the derivative nature of the claims for a moment in the Delaware case uh, at the time of the Delaware case whether you're looking at it from the perspective of the class or from Erickson being there derivatively they did not have these claims the claims for fraudulent transfer did not exist in those entities. They could never have brought them. Ever, ever, ever. Never owned them and even once Erickson became a debtor in possession, Erickson did not own the claims anyway they are creditor claims and what the bankruptcy does is it allows a debtor in possession to bring those claims on behalf of the creditors and then once that gets transferred, it allows the trustee to bring those claims on behalf of the creditors but the claims did not exist at the time that this was being done and as part of the plan, as you Judge Joseph, you've mentioned as part of the plan certain claims got put into the trust and as we've just heard, they relate to these things that were at issue in the Delaware case. Okay, if those things can't be brought because of besting or something else, then they're valueless. No reason to transfer them to a trust if there is no claim. There is a claim. It's different parties How much are you trying to, you know, if you succeeded in full How much would you be recovering from these defendants? I'm sorry, but I do not know the answer to that. We're not even far enough into it. We're just into the pleadings. A minimum of $27.5 million, right? A minimum, yes. A minimum. So that is, that basically sets the $18.5 million that they already, would you deduct the $18.5 million they already paid? Your Honor, because we got dismissed on a motion to I don't have all those issues. We haven't had any experts in the case. I haven't considered all of those issues. All I know is that we have pleaded that the value that was received by Erickson on these claims was not reasonably equivalent value with respect to the creditors. The creditors were not represented in the Delaware case. The Delaware judge could not have could not have taken their interest into account and when he takes the interest of the derivative company into account, it's the shareholder's interest. It's the equity. He is not taking into account the creditors because he has no reason to know that he has to and nobody's telling him to do it and nobody is objecting to how the thing is divided because it's in everybody's interest. The class gets paid directly. They are shareholders. What role did Erickson's independent counsel play in this settlement? I do not know. I do not know. Well, Erickson became the debtor. The debtor became the reorganized debtor and it was the reorganized debtor who created the litigation trust. All of those entities, though, are different and the entity that settled is Erickson Prepetition and Erickson Prepetition did not own any of these claims and couldn't have. The reorganized Erickson and even reorganized Erickson as Erickson's debtor in possession, it didn't own the claims either. It just had the ability to bring them and if this works, that you can get a settlement on the eve of bankruptcy that absolves you of these claims for creditors then what bankruptcy courts could do is abandon them. I'll just point a privilege here and I'll give it back to you at the end, but I wrote an opinion some time ago building on a previous Fifth Circuit opinion that said under bankruptcy law I think it was 524 it was impermissible to give releases to non-debtors. However, parties are routinely doing that in the big cases in the Fifth Circuit now ignoring what I wrote and basically you're trying to, I mean, so you're a little late at the party in trying to apply what I thought was the law, but I'll give you another minute. I don't mean to be late to the party, but what I know is that these claims were not at issue in Delaware and the Delaware judge did not do a reasonably equivalent value hearing whenever he was approving it. He did not take into account the creditor's position. You can go back and look at the record. In the Erlewine case, the divorce court judge didn't take into account the husband, I think the husband became the debtor. His position, I just can't remember whoever was the drug addict got less in the divorce and then filed bankruptcy and the court in the Fifth Circuit says you know, the court made, the state court made an appropriate determination within the realm that it was supposed to and we're not going to go back into that for purposes of fraudulent transfer law. My only response to that would be nobody in this case is asking for anybody to go back and relitigate something in front of the Delaware judge or to say that there's something that he did that was wrong in approving the settlement that was brought to him because all the judge did in Delaware was say yes when both parties came to him and said please sign this and even when signing it he had reservations and look at that Fox in the Hen House quote that's in there. You have the site, you can go look at it. The judge was concerned about some of it but he was not taking into account the creditors because they were not there to say anything and they couldn't have been there and as a result all of whether you look at it from Bessing's point of view, from Rooker-Feldman or any of these others, you can't get there unless there is privity between the trustee and Erickson and there isn't. Thank you very much.